TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527
    Facsimile: (213) 894-6269
    E-mail:    scott.paetty@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>          v.<br><br>ALEX LAWRENCE WILKISON,<br>  aka "Alex Wilkerson,"<br><br>      Defendant. | No. CR 20-353-JFW-3<br><br>GOVERNMENT'S SENTENCING POSITION<br>FOR DEFENDANT ALEX WILKERSON<br><br>Sentencing Date: January 24, 2022<br>Sentencing Time: 8:00 a.m.<br>Location:    Courtroom of the<br>              Hon. John F. Walter |

    Plaintiff United States of America hereby submits its position regarding the sentencing of defendant Alex Wilkerson.

    This position is based upon the attached memorandum of points and authorities, the Presentence Report prepared by the United States

//

1  Probation Office, the files and records in this case, and such

2  further evidence and argument as the Court may permit.

3   Dated: January 4, 2022            Respectfully submitted,

4                                     TRACY L. WILKISON
                                      United States Attorney
5
                                      SCOTT M. GARRINGER
6                                     Assistant United States Attorney
                                      Chief, Criminal Division
7

8                                     _____
                                      SCOTT PAETTY
9                                     Assistant United States Attorney

10                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2       In a little more than a year, defendant Alex Wilkerson

3  ("defendant" or "Wilkerson")[1] received $183,600 in fraudulent

4  proceeds from a corporate embezzlement scheme orchestrated by co-

5  defendant Judith Fernandez-Adelugba ("Fernandez-Adelugba").

6  Defendant's role in the scheme involved allowing Fernandez-Adelugba

7  to submit fraudulent invoices to her employer in the name of a

8  company that defendant created and owned, Engineering Talent Connect.

9  After receiving payment on the invoices into bank accounts that he

10 controlled, defendant returned part of the fraudulently obtained

11 money to Fernandez-Adelugba and used the remainder for his personal

12 benefit.  For the reasons set forth below, the government recommends

13 a sentence of 10 months' imprisonment to be followed by a three-year

14 term of supervised release, a restitution order in the amount of

15 $183,600, and a special assessment of $100.  This sentence is

16 sufficient, but not greater than necessary, to address the factors in

17 18 U.S.C. § 3553(a).

18 **I.    FACTUAL BACKGROUND**

19      **A.    The Fraudulent Scheme**

20      The following summary of defendant's offense conduct is based on

21 facts stated in the PSR ¶¶ 16-21 and on defendant's plea agreement

22 (ECF 65).  Beginning on November 8, 2016 and continuing through

23 December 6, 2017, Wilkerson participated in and became a member of a

24 scheme to defraud victim Company-1 that was conceived and

25 orchestrated by Fernandez-Adelugba, who at the time was employed as

26

27 _____

28      [1] Defendant is named in the indictment (ECF 1) as Alex Wilkison,
but his true name is Alex Wilkerson.  (PSR ¶ 1 n.1.)

1    the Manager of Administration (similar to the head of the Human
2    Resources Department) at Company-1.

3         Fernandez-Adelugba used her position at Company-1 to embezzle
4    Company-1 funds that were supposed to be used for diversity
5    recruitment, which included implementing and managing programs to
6    encourage persons from diverse gender, racial, ethnic, and other
7    backgrounds to apply for jobs at Company-1.  Fernandez-Adelugba had
8    authority to approve payment of invoices at Company-1 up to $25,000.
9    She recruited defendant, who was married to a work colleague and
10   friend of Fernandez-Adelugba at Company-1, and other co-schemers to
11   assist in a scheme that involved the submission of false invoices to
12   Company-1 for purported diversity recruitment expenses.

13        To carry out the scheme, defendant, at Fernandez-Adelugba's
14   instruction, created a company named Engineering Talent Connect
15   ("ETC") by filing a fictitious business statement with the County of
16   Los Angeles.  The purpose of ETC, as Wilkerson knew, was to provide a
17   conduit through which to embezzle funds from Company-1.  To provide
18   the appearance of legitimacy, Wilkerson obtained the following for
19   ETC: an Employer Identification Number; a business checking account
20   in the name of "Alex L Wilkison DBA Engineering Talent Connect" at US
21   Bank (the "ETC Account"); a post office box; and an email account.

22        The scheme was principally carried out by issuing fake invoices
23   to Company-1 for services, including job listings and advertisements,
24   that ETC purportedly posted on behalf of Company-1 on various
25   websites, and reimbursement of monies purportedly paid by ETC on
26   Company-1's behalf for corporate sponsorships at colleges and
27   universities.  In truth, as Wilkerson well knew, ETC had provided no
28   goods or services to Company-1 and therefore the money paid by

2

1  Company-1 was based on false and fraudulent misrepresentations by

2  Wilkerson and Fernandez-Adelugba.  Once the funds were disbursed by

3  Company-1 in payment for the fraudulent invoices, Wilkerson and

4  Fernandez-Adelugba would divert these misappropriated funds for their

5  own personal use and enrichment.  In many instances, Wilkerson would

6  use funds received from Company-1 to purchase money orders, make cash

7  withdrawals, and conduct debit card transactions for personal

8  expenditures.  Wilkerson would also kickback a portion of these funds

9  to Fernandez-Adelugba in the form of money orders and cash payments.

10       For the purpose of carrying out the scheme, on December 7, 2016,

11  Wilkerson and Fernandez-Adelugba, caused Company-1 to send an

12  interstate bank wire in the amount of $45,000, which included payment

13  of $20,000 to the ETC Account, as payment for a false invoice (number

14  111816B) that Fernandez-Adelugba submitted to Company-1.  The fake

15  invoice billed Company-1 for corporate sponsorships that were

16  purportedly paid by ETC, on behalf of Company-1, to California State

17  University-Northridge and California State University-Los Angeles.

18  However, as defendant and Fernandez-Adelugba knew, no funds had been

19  paid to either university by ETC and therefore the $20,000 that had

20  been transferred to the ETC Account by Company-1 pursuant to invoice

21  number 111816B were fraud proceeds.  Defendant then caused a cash

22  withdrawal in the amount of $18,000 comprised of the fraud proceeds

23  to be made from the ETC Account, a portion of which defendant then

24  gave to Fernandez-Adelugba to fund a vacation to Las Vegas, Nevada.

25       Over the course of the scheme, Fernandez-Adelugba submitted a

26  total of 14 fraudulent invoices to Company-1 on behalf of ETC

27  totaling $192,000.  Company-1 paid 13 of those invoices totaling

28  $183,600 into the ETC Account.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## B.   Procedural History

A grand jury in the Central District of California returned a 17-count indictment that charged defendant in four counts:  three counts of wire fraud, in violation of 18 U.S.C. § 1343, together with Fernandez-Adelugba; and one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349, together with Fernandez-Adelugba and her father, George Fernandez.  Defendant signed a plea agreement whereby he agreed to plead guilty to count seven, a substantive wire fraud count.[2]  (PSR ¶ 1-2.)  Defendant subsequently appeared before this Court and entered a plea of guilty. (ECF 69.)

## II.  THE PRESENTENCE REPORT AND SENTENCING GUIDELINES CALCULATION

The Probation Office found that defendant's total offense level is 14, based on a base offense level of 7 (U.S.S.G. § 2B1.1(a)(1), a 10-level upward adjustment for loss between $150,000 and $250,000 (U.S.S.G. § 2B1.1(b)(1)(F), and a three-level reduction for acceptance of responsibility U.S.S.G. 3E1.1(a)-(b).  (PSR ¶¶ 29-40 and at 3.)

The government concurs in the Probation Office's calculation of the Guidelines; however, as discussed below and pursuant to the plea agreement, the government also moves for a two-level downward variance as recognition of defendant's early acceptance of responsibility, resulting in an offense level of 12.  While the USPO acknowledges that the parties agreed to the two-level variance in the plea agreement (ECF 65 ¶ 3(d)), it did not agree that a downward

---

[2] The government requests that the Court incorporate the plea agreement into the proceedings at the sentencing hearing.

4

variance should apply and did not take the variance into account in calculating the Guidelines range (see ECF 70 at 5).

Defendant argues for a two to four point reduction in his guidelines for minimal or minor role in the fraud scheme. (ECF 119 at 2-5.) The Court should not agree to a such a reduction. Defendant analogizes his involvement to that of a "money mule" whose only responsibility was to "open and [sic] account" and "cash the checks that Fernandez-Adelugb [sic] gave to him." (Id. at 3.) But contrary to defendant's assertions, he did more than just open an account and cash checks. He actively participated in the fraud, which depended on his involvement to increase the success of the scheme. Wilkerson created the ETC company and maintained sole control over ETC's bank account. (PSR ¶ 34.) In so doing, he willingly created a company whose sole purpose was to further the fraud and he willingly transferred illicit funds from the scheme back to Fernandez-Adelugba. These are not the hallmarks of a defendant who "perform[ed] a limited function in the criminal activity," U.S.S.G. § 3B1.2, cmt. n. 3(A). Nor are they characteristic of a defendant "who does not have a proprietary interest in the criminal activity." (ECF 119 at 4.) Upon a careful consideration of the nature and extent of Wilkerson's involvement in the offense, the USPO correctly found that defendant was an "average participant" in the scheme and did not merit a role reduction. (PSR ¶¶ 32-34.) The Court should also reject defendant's argument for a role reduction.

Accounting for the parties' agreed-upon Guidelines calculations adopted by the USPO, and the parties' agreed upon two-level variance, the resulting total offense level is 12, which is calculated as follows:

| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
|---|---|---|
| Specific Offense Characteristics: | | |
| Loss of More Than $150,000 and Less Than $250,000 | +10 | U.S.S.G. § 2B1.1(b)(1)(F) |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1(a),(b) |
| Variance | -2 | 18 U.S.C. § 3553(a) |

The Probation Office calculated defendant's criminal history category as I based on zero criminal history points.  (PSR ¶¶ 42—46.) The government concurs in the Probation Office's calculation of defendant's criminal history.  With an offense level of 12 and a criminal history category of I, defendant's applicable advisory guidelines sentencing range is 10-16 months.

## III. A LOW-END GUIDELINES SENTENCE OF 10 MONTHS' IMPRISONMENT IS REASONABLE AND JUST

The record supports a low-end sentence of 10 months of imprisonment.  Any lesser sentence would not sufficiently address the § 3553(a) factors, including, the nature and circumstances of defendant's crime, his history and characteristics, the need to reflect the seriousness of the crime, promote respect for the law, provide just punishment, protect the public from further crimes of defendant, and avoid unwarranted sentencing disparities.

### A. The Seriousness of the Offense and the Need to Provide Just Punishment Support the Government's Recommended Sentence

The nature and circumstances of defendant's crime are serious. See 18 U.S.C. § 3553(a)(1).  Defendant played an important role in a cunning and cynical fraud scheme designed to steal money from his wife's employer by taking advantage of a Company-1's laudable efforts to increase diversity through hiring initiatives.  Although there is

6

no evidence proving that defendant knew that the mechanics of the scheme would involve the submission of fake invoices related to diversity outreach, the name of his company, Engineering Talent Connect, implies a connection to hiring practices at engineering companies, like Company-1, rather than some other business purpose unrelated to the fraud scheme.

Moreover, the timing of defendant's conduct here is particularly concerning.  Defendant submitted registration paperwork for ETC a mere two days before Fernandez-Adelugba submitted the first fraudulent ETC invoice and just over two weeks before the first wires from Company-1 were deposited into the ETC Account.  This implies that ETC had no legitimate purpose other than as a conduit for fraud proceeds.  Co-defendant Fernandez-Adelugba, a work colleague of defendant's wife at Company-1, was undisputedly the leader and organizer of the scheme and instructed defendant on what actions to take to further the scheme, including filing the registration paperwork for ETC and opening the ETC Account, but the scheme would not have been as successful as it was in stealing money from Company-1 without defendant's participation.  Put another way, to keep up appearances of legitimate expenses that she was approving, Fernandez-Adelugba needed a company to that was not connected to her to put on the fake invoices she submitted.  Defendant, via ETC, filled that role.

Although there is no evidence to support that defendant was aware of or could reasonably have foreseen the additional funds that were embezzled by Fernandez-Adelugba and her father, George Fernandez, defendant still profited handsomely from the scheme.  The intended loss to Company-1 due to the ETC invoices submitted by

7

1  Fernandez-Adelugba totaled nearly $200,000, and defendant actually
2  received $183,600 in illicit proceeds into his ETC Account as result
3  of the scheme.  Defendant's plea of guilty is a mitigating fact,
4  which is accounted for in the two-level variance sought by the
5  government.

6      **B.   History and Characteristics of the Defendant**

7      Defendant's history and characteristics support a sentence of 10
8  months of imprisonment.  <u>See</u> 18 U.S.C. § 3553(a)(1).  This is not
9  the first time defendant has been convicted of a felony.  Defendant
10  was previously convicted of second degree burglary in 1994 in
11  California Superior Court.[3]  (PSR ¶ 44.)  Although this conduct
12  occurred over 20 years prior to the instant offense, it appears that
13  the passage of time has not dulled defendant's appetite for
14  committing crimes and endangering the community.  The difficulties
15  defendant had growing up in "gang-related territory" (PSR ¶ 55) do
16  not excuse his criminal conduct here.

17      **C.   The Need to Promote Respect for the Law, Protect the Public
18  from Further Crimes by Defendant, and Avoid Unwarranted
    Sentencing Disparities**

19
20      A sentence of 10 months of imprisonment is necessary to promote
21  respect for the law, protect the public from further crimes of
22  defendant, and avoid unwarranted sentencing disparities.  18 U.S.C.
    § 3553(a)(2).
23
24      Defendant's offense conduct in this case and his criminal
25  history demonstrate his lack of respect for the law.  As set forth
26  above, defendant's history and characteristics as well as the nature

27
28      [3] Defendant was also arrested for burglary in 1997; however, it
does not appear that he was convicted of that additional offense.
(PSR ¶ 49.)

1    and circumstances of his crimes demonstrate that defendant remains

2    willing to seize an opportunity to line his own pockets at the

3    expense of others, and thus poses a recidivism risk.  Indeed,

4    defendant was not deterred by his prior brush with the criminal

5    justice system and the resulting 10-day jail sentence.  A meaningful

6    custodial sentence is necessary to deter defendant from further

7    criminal conduct as well as to deter other similarly-situated

8    individuals.  As the Court is aware, fraud runs rampant through this

9    district.  Defendant's guidelines are already comparatively low given

10   the much higher loss amount caused by the entire scheme.  A lenient

11   sentence here may convince others that committing fraud may be worth

12   the risk of getting caught.

13       Lastly, a sentence of 10 months of imprisonment would ensure

14   that defendant does not receive a sentence below or above what other

15   similarly situated defendants would receive.  See United States v.

16   Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) (explaining that the

17   courts can rely on a correctly calculated Guidelines range to avoid

18   unwarranted sentencing disparity).

19       D.   Restitution

20       Restitution is applicable pursuant to 18 U.S.C. § 3663A.  (PSR

21   ¶¶ 96-97.)  The Mandatory Victim Restitution Act ("MVRA") requires a

22   district court to order restitution when (1) a defendant commits an

23   "offense against property," and (2) there is an identifiable

24   "victim."  18 U.S.C. § 3663A(a)(1), (c)(1).  The scheme to embezzle

25   funds here is an offense against the property of Company-1.  The MVRA

26   provides for "restitution to each victim in the full amount of each

27   victim's losses," and restitution must be determined "without

28   consideration of the economic circumstances of the defendant."  18

U.S.C. § 3664(f)(1)(A).  The amount of restitution due in this case, measured by the amount of actual loss to Company-1 due to the fraudulent ETC invoices is $183,600.  (PSR ¶ 96; ECF 65 ¶ 6.)

**IV.   CONCLUSION**

For the foregoing reasons, the government believes that a sentence of 10 months in custody, a three-year term of supervised release, a restitution order in the amount of $183,600, and a special assessment of $100 is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).